Richard R. Tyson v. Commissioner.
Tyson v. Commissioner
Docket No. 1165.
United States Tax Court
1944 Tax Ct. Memo LEXIS 305; 3 T.C.M. (CCH) 301; T.C.M. (RIA) 44101; March 31, 1944
*305 H. M. Stolar, Esq. and Stanley S. Waite, Esq., 408 Pine St., St. Louis, Mo., for the petitioner. G. W. Reardon, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income taxes for the calendar years 1939 and 1940, in the respective amounts of $1,308.97 and $2,874.84. That part of the deficiency is here in issue which is raised by respondent's inclusion in petitioner's taxable income of amounts of money earned in petitioner's business attributable to certain shares in that business and certain sums of money, which petitioner alleges were the subjects of gifts by him to his wife and minor children. Findings of Fact During the tax years involved here, and for some years prior thereto, petitioner was the sole proprietor of a small loans business, known as "State Loan Agency", with its principal place of business in East St. Louis, Illinois. He resides in Clayton, Mo., and filed his income tax returns for the tax years with the collector of the first district of Missouri. On January 1, 1938, petitioner executed a certain written instrument, purporting to give to his wife a "cash interest" of $5,000 in his *306 business. The language of the instrument exclusive of signatures, is as follows: "KNOW ALL MEN BY THESE PRESENTS: That I, R. R. Tyson, of the City of Belleville, County of St. Clair, State of Illinois, in consideration of love and affection, hereby give irrevocably, assign and set over to my wife Mabel G. Tyson, for her own use forever, a cash interest of $5,000.00 (Five Thousand Dollars) in my licensed Small Loan Business and the said Mabel G. Tyson shall have immediate credit, on the general ledger of the books of the said licensed Small Loan Business, in her own name, for the said sum of $5,000.00 (Five Thousand Dollars) and the said sum shall be immediately charged against my account." Simultaneously, petitioner and his wife executed a written "Contract and Agreement" which set out the terms and conditions under which petitioner's wife was to advance and loan to petitioner for use in his business certain sums of money. The sum of money which she immediately proposed to lend was that "cash interest" in the business which was allegedly being given her at that time. No money was actually given her at the time, and none was delivered by her to petitioner for use in his business. *307 The transaction was carried out by making appropriate debits and credits on the books of the State Loan Agency. It was provided by this agreement that she was to receive, at the end of each year "such proportionate share of the net profits of * * * [petitioner's] business as the average daily balance of such monies so advanced and loaned * * * bears to the total capitalization employed in * * * [the] business * * *." Specific and detailed provision was made for the manner in which the net profits were to be computed, and among the deductions declared allowable for that purpose was a salary for petitioner of not to exceed $6,000 a year. It was further provided that petitioner's wife "is not to be considered a partner in the * * * business, * * * nor is she to acquire any right, title or interest in or to the good will of such business, * * * or to the * * * profits from the sale of such business * * * [she] being hereby specifically and definitely limited to the profits accruing from the regular operation and conduct of such business as a going business. And, in no event, * * * is * * * [she] chargeable with any net loss occasioned by the operation of said business." The contract *308 also provided that petitioner's wife "may withdraw * * * a sum not exceeding * * * $150 * * * once in thirty * * * days, except that if shall be optional with * * * [petitioner] to permit [her] * * * to withdraw all or any part of the sum then standing to [her] credit at any time." Provision was made for the termination of the contract upon six months' written notice by either party to the other. On January 15, 1939, and on January 15, 1940, petitioner executed other and similar instruments purporting to assign to his wife "cash interests" of $4,000 and $5,000, respectively, in his business. The proper entries were made in petitioner's books indicating these transfers. Petitioner's wife did not at any time withdraw any money from the account during the taxable years, but, after consultation with her husband, agreed that her alleged share of the net profits which amounted to $1,507 for 1938, $2,781.50 for 1939, and $3,496 for 1940, should be credited to her account on the books of her husband's business. Petitioner's wife reported the receipts of the amounts referred to above for 1939 and 1940, and paid the tax thereon. When respondent determined this income to be properly taxable *309 to her husband, petitioner's wife filed claims for refund in order to protect her interests in the event of a final determination in favor of respondent. Petitioner's wife did not render any service to petitioner's business during the years involved here, and the income set out above was her only income. On August 1, 1939, petitioner, as grantor, executed a trust instrument by which he purported to give irrevocably to his wife, as trustee, the sum of $4,000 for the benefit of his minor daughter until she became 21 years of age (or longer, under some circumstances), at which time the trust was to terminate, and the property and accumulated earnings to be turned over to the beneficiary or to her estate. The trustee was empowered to invest and reinvest the funds of the trust as she deemed advisable, and specifically to invest them in any finance company in which petitioner is interested. The trustee was given power, in her discretion, to use any part or all of the income derived from such funds, after the payment of the expenses of the trust, for the care, comfort, education and recreation of petitioner's daughter. Simultaneously with the execution of this alleged trust instrument, *310 on August 1, 1939, petitioner, as manager of the small loans business, and his wife, as trustee, executed a "trustees contract", the provisions of which are substantially similar to the "Contract and Agreement" entered into between petitioner and his wife in her individual capacity, except that the provision relating to withdrawals by the trustee provided that "it shall be optional with [petitioner] to permit or require said Trustee to withdraw any or all of the moneys standing to the credit of said * * * [trustee] * * * at any time". No money was, in fact, delivered to the trustee of this trust, and none was delivered by her to petitioner for use in his business, as provided in the contract last above referred to. An account was set up on the books of the business on which the appropriate entries were made. No withdrawals were made from this account at any time by the trustee. On January 15, 1940, petitioner executed another document purporting to assign to his wife as trustee for his daughter, a cash interest of $4,000 in petitioner's business. The trustee's account on the books of petitioner's business was credited with that amount. At the end of each of the years 1939 and 1940, *311 petitioner computed the share of the net profits of the business alleged to be due the trust for his daughter, and credited the account as "income accrual" with such amount. The amounts so credited were $446.50 for 1939 and $1,749.71 for 1940, and were reported by his wife, as trustee, in her 1939 and 1940 fiduciary income tax returns, and taxes, in the respective amounts of $13.86 and $72.59, were paid. None of the income so reported was ever paid to or used for the benefit of the beneficiary of the trust. No claim for refund of the taxes so paid has been filed by the trustee, and on October 26, 1943, an agreement not to file such claim and agreeing to indemnify the Commissioner with respect to such claim was filed with the Commissioner of Internal Revenue. On June 12, 1940, petitioner executed a trust instrument purporting to transfer $4,000 in trust to petitioner's wife, as guardian of their minor son. There was no delivery of any money to the trustee-guardian, the petitioner merely entering a credit to an account set up as "Guardian Loan Account" with a corresponding charge against his own capital account. The indenture was, in all respects material to this proceeding, identical *312 with that which purported to create the trust for petitioner's daughter, except for the necessarily different names and dates. Substantially the same kind of contract as the "Trustee's Contract" referred to above, but denominated in this instance a "Guardian's Contract", was executed on the same day as the trust indenture was signed. Bookkeeping entries evidencing the alleged gifts were made here, in the same manner as was done in connection with the gift to the daughter, and the share of the net income supposed to be due this trust was credited to the account as of December 31, 1940, in the amount of $464.15 and tax thereon was paid by the Guardian in the amount of $16.03. None of the income so credited to this account was ever distributed to or for the benefit of the beneficiary of this trust, or withdrawn for any purpose. No claim for refund was filed with respect to the tax paid by the Guardian here, and an agreement to indemnify the Commissioner with respect to such claim was filed on October 26, 1943. In making the assignments and transfers to his wife and to the trusts as above set forth, petitioner did not divest himself of the ownership and control of any res, nor *313 did he intend to, and made no valid and completed gifts in connection therewith. Opinion KERN, Judge: The basis of the inquiry in this proceeding is whether or not the petitioner made valid, completed gifts to his wife of certain "cash interests" in his business, and to trusts for the benefit of his two children of certain sums of money, so that the income thereafter earned thereon is taxable to the donees, rather than to petitioner, as respondent has determined. The alleged gifts to petitioner's wife individually were made direct to her, and those for the benefit of his children were "given" to his wife, as trustee. The instrument creating the original gift, and the contract providing for the return of the subject matter to petitioner as a "loan" in each case, were executed simultaneously and must be regarded as one transaction. Later gifts were made subject to the provisions of the respective contracts then in effect. This court has recently considered the case of Robert Walker Tyson, T.C. Memo. Opinion entered February 29, 1944, in which the basic facts were virtually parallel to the facts before us here. The petitioner there was engaged in the same type of business, and *314 the gifts were made to his wife, subject to the same arrangement for "lending" the subject matter back to that petitioner for use in his business. The written instruments which evidenced the transactions there are identical, word for word, in all material respects, with the instruments under consideration here, and the detailed analysis of those documents, set out in our decision of that case, apply here with equal force. We incorporate that opinion herein by reference, and attach a copy thereof to this decision for the information of the parties to this proceeding. The single material particular in which the contract covering the "lending" of the wife's gift in the instant case differs from that same contract in the case of Robert Walker Tyson, supra, is in the provision relating to the right of the donee to withdraw the income in question. There, the contract provided that it would be optional with the donor to permit the withdrawal of any of the funds standing to his wife's credit, while, in the instant case, petitioner agreed to allow his wife to withdraw a sum not in excess of $150 each thirty days "except that it shall be optional with [petitioner] to permit [his wife] *315 to withdraw all or any part of the sum then standing to her credit at any time." The effect of this provision seems to make any withdrawals entirely optional with petitioner, so that the two contracts are actually alike in this respect, also. The evidence indicates that petitioner's wife never, during the taxable years, received any of the income so credited to her, while in the Robert Walker Tyson case, supra, the evidence showed that the wife did actually receive the entire amount of the profits credited to her during the taxable year. We think this single variance in the terms of the two contracts does not weaken in the least the applicability of the reasoning of that case to this. We held there that there was no valid, completed gift, and we think that case was properly decided, and governs our decision here. With respect to the gifts to the trusts for the benefit of the children, our conclusion is the same. The provisions of these contracts relating to withdrawals are identical with those in the Robert Walker Tyson case, supra. While the instruments purporting to establish the trusts recited that the petitioner gave to his wife, as trustee (or Guardian, *316 in one case) the sum of $4,000, to invest in any stocks, bonds or securities of any kind in her absolute discretion, including the power to invest the same in any finance company in which petitioner was interested, the evidence establishes beyond doubt that petitioner did not at any time deliver, or intend to deliver, any amount of money for investment at her discretion. He simply credited to an account in her name, as Trustee or Guardian, that amount on the books of his business, thus effectively nullifying any pretended discretion or control vested in the trustee. In establishing these trusts petitioner did not pretend to give away absolutely any share or interest in his business. The corpus of each trust was the sum of $4,000. The fund which was the supposed subject of the gift was never, in fact, delivered to the trustee, but was retained by petitioner in his business exactly as before, never having left, for one moment, his unrestricted dominion or control. It was entirely optional with him whether any part of it, or the profits thereto accruing, could be withdrawn by his wife as trustee. None of the income was, in fact, ever paid to the trustee. We think petitioner did not make *317 valid completed gifts to the trusts in question and that he is therefore taxable on the income here involved under section 22(a). In view of this decision, it is unnecessary to consider the effect of the decision of the Supreme Court of the United States in . Decision will be entered for the respondent.